IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSHUA SHROPA, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:25-cv-03226-B |
| | § | |
| DRINK LMNT, INC., | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF JOSHUA SHROPA'S FIRST AMENDED COMPLAINT**

Plaintiff Joshua Shropa ("Shropa") files this First Amended Complaint against Drink LMNT, Inc. ("Defendant") and alleges the following:

## I.     PARTIES

1.     Shropa is an individual residing in Dallas County, Texas.

2.     Defendant Drink LMNT, Inc. is a Delaware corporation with its principal office at 1716 W Babcock St., Bozeman, Montana 59715. Defendant does business in the State of Texas but has not designated a registered agent within the State of Texas. Defendant may be served with this First Amended Complaint electronically through its counsel, Bell Nunnally, who have appeared in this case on behalf of Defendant as its lead counsel.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over Defendant pursuant to the Texas Uniform Declaratory Judgments Act, Texas Civil Practice and Remedies Code 37.001, *et seq*., because Defendant does business in Texas, and the events forming the basis of the suit occurred, in whole or in part, in Texas. This Court further has jurisdiction over this lawsuit pursuant to Texas Government Code Section 24.007. Specifically, Defendant sells its products in retail locations located within

1

Texas including, but not limited to, Walmart, Target, Vitamin Shoppe, and multiple other locations including gyms, grocery and convenience stores, specialty stores, and health/wellness providers.

4.    This Court further has jurisdiction over Defendant and over this lawsuit, insofar as on November 20, 2025, Defendant filed its notice of removal with this court and in Texas State Court on the grounds that the parties to the lawsuit were diverse, and the amount in controversy exceeds the sum of $75,000.00.

5.    Jurisdiction for the attorneys' fees requested by Shropa herein is conferred upon this Court by Texas Civil Practice and Remedies Code Section 37.009 and pursuant to Texas Civil Practice and Remedies Code Section 38.001. Jurisdiction to award the declaratory relief requested herein is conferred upon this Court by Texas Civil Practice and Remedies Code Section 37.004 and to award the damages requested pursuant to Texas Government Code Section 24.007.

6.    Venue is proper in Dallas County, Texas pursuant to Texas Civil Practice and Remedies Code Sections 15.002(a) because the events forming the basis of the suit occurred, in whole or in part, in Dallas County and because this case was originally filed in the courts of Dallas County Texas and Defendant did not challenge venue in Dallas County, but rather removed this case to the United States District Court for the Northern District of Texas, Dallas Division.  At all relevant times during his employment with Defendant, Shropa has lived and worked for Defendant from his home office in Dallas County, Texas.

### III.    FACTUAL SUMMARY

7.    Defendant manufactures and sells a zero-sugar electrolyte drink mix and canned beverage formulated to enhance hydration.  Its target market includes athletes, leisure sport participants, and individuals following low-carb or keto diets.

8.    Shropa began working for Defendant in January of 2022 as its Director of Finance, FP&A.  During his work with Defendant, Shropa performed on an exemplary basis as evident through

the receipt of multiple promotions, expanded managerial responsibilities and continued increases to his base salary. He initially received a starting salary in 2022 of $155,000 per year.  However, by 2025, his role and management responsibilities, including his position on the senior leadership team, had significantly expanded and consisted of the title of Director of Finance and Supply Chain, whereby he was the senior financial representative of the Defendant and oversaw all Defendant's production and logistics activities. As a result of his strong job performance, Shropa received a pay raise on June 26, 2025, that increased his base salary from approximately $600,000 per year to $1.05 million per year.

9.      In addition to his base salary, Shropa was also given two (2) Restricted Stock Awards (collectively, "the Stock Awards") by Defendant.  Each Stock Award granted Shropa 20,000 shares of common stock in Defendant ("Shares").  The first Stock Award was dated February 28, 2022 (the "2022 Award") (Exhibit A) and the second Stock Award was dated September 5, 2023 (the "2023 Award") (Exhibit B).  Both Stock Awards were subject to somewhat confusing vesting and repurchase rights.

10.      On June 23, 2024, Defendant and Shropa entered into an Amendment to amend the terms of 2022 Award (the "Amendment") (Exhibit C).  The Amendment was poorly drafted and established a "floor amount" of $1,749,960.00 (on page 1 of the Amendment) and $1,449,960.00 (on page 2 of the Amendment) that Shropa would need to be paid in connection with any attempted repurchase of Shropa's Vested Shares under the 2022 Award.  Unfortunately, neither of the Stock Awards nor the Amendment set forth a procedure or mechanism to actually determine the fair market value of Shropa's Shares in connection with any proposed repurchase by Defendant.

11.      In August 2025, shortly after receiving his substantial salary increase, Shropa went on paternity leave in connection with the birth of his first child.

12.     During his paternity leave, Shropa continued to respond to work emails and phone calls and attend to ongoing business needs.  At no time during or prior to the paternity leave did Defendant give Shropa any hint that his job might be in jeopardy as a result of going on paternity leave.

13.     On September 26, 2025, Defendant's CEO, James Murphy, suddenly and without notice, terminated Shropa's employment without cause during a telephone call, while Shropa was still on paternity leave ("Termination Date"). On the Termination Date, Shropa had 24,999 "vested Shares" as defined in the Stock Awards ("Vested Shares").

14.     After Shropa was terminated, Defendant offered to repurchase all of Shropa's Vested Shares for $2,999,880—plus an additional $750,000 in severance for a total consideration of $3,749,860, which equates to a per share value of ($3,749,860/24,999 = $150) for his Vested Shares. On information and belief, Defendant made the offer in this form (which included a severance component, even though Shropa was not contractually owed a severance) because it did not want to have any record reflecting a Vested Share value anywhere near $150 per share. Nonetheless, Shropa did not accept Defendant's offer because he believed his Shares were worth substantially more than $150 per share.

15.     Shropa repeatedly asked Defendant to provide "the math" behind Defendant's share valuation, but Defendant adamantly refused to provide Shropa with essential and recent financial information to enable Shropa to determine whether Defendant's offer was reasonable and in line with the fair market value of his Vested Shares.  Ironically, during these repurchase discussions, Defendant also claimed it had hired a nationally recognized valuation firm, Alvarez and Marsal, to perform an external valuation of Defendant.  After learning this fact, Shropa unsurprisingly asked Defendant to send him the valuation report because it would be very helpful in determining the fair market value

and potential repurchase price for his Vested Shares. Defendant refused to provide the valuation report, claiming their last offer was greater than the valuation amount.

16. On or about October 17, 2025, Defendant threatened to "pull their offer" unless Shropa accepted it that same day and agreed to a three (3) year non-compete and a five (5) year non-solicitation restriction. Shropa did not accept their then pending offer.

17. Genuine issues and disputes exist between the parties regarding the fair market value and repurchase rights related to the Vested Shares.

18. On October 20, 2025, Shropa filed a lawsuit against Defendant in Dallas County State District Court ("State Court Lawsuit"), seeking declaratory relief regarding the parties' right and obligation under the Stock Awards.

19. On or about November 17, 2025, Defendant answered the State Court Lawsuit.

20. Even prior to that, on or about November 4, 2025, Defendant filed a motion to seal the State Court Lawsuit. Shropa strongly opposed Defendant's motion to seal and (through counsel) advised Defendant's counsel of his opposition. Based on those discussions, Defendant took down its hearing on Defendant's motion to seal which had been set for November 21, 2025.

21. On November 21, 2025, Defendant removed this case to the United States District Court for the Northern District of Texas. In connection with such removal, Defendant publicly filed all of the State Court Lawsuit pleadings, with the United States District Court for the Northern District of Texas, including Shropa's Original Petition and attached exhibits which had consisted of the 2022 Award, the 2023 Award and the Amendment.

22. After the case was removed to federal court, Defendant made a second offer to repurchase the Vested Shares for $120 a share, omitting the previously offered $750,000 severance that had been part of the initial offer. Shropa, again, asked Defendant to please provide basic financial information and/or the recent valuation report obtained by Defendant. Defendant, again, refused to

provide such documents or information but did make a third and final offer to Shropa of $125.79 a share for Shropa's Vested Shares. However, this final offer also came with a threat. Shropa was told by Defendant to either accept this latest offer or Defendant would claim Shropa breached some undefined nondisclosure agreement in some unspecified contract (which Defendant refused to provide Shropa) and repurchase the Vested Shares for $0. Shropa refused to accept Defendant's offer and instead sent Defendant a Request for Production of Documents.

23.     It is worth noting that Defendant asserted in its initial disclosures filed in this lawsuit, and elsewhere, that it is within Defendant's sole discretion to repurchase, or not, all of Shropa's Vested Shares, despite the fact that the Amendment giving Defendant the right to repurchase certain Vested Shares only applies to the 2022 Stock Award, and not to the 2023 Stock Award.

24.     Second, despite the repurchase right granted to Defendant with respect to the 2022 Stock Award being conditioned on the price per share being determined "*in good faith*" by Defendant, Defendant has asserted that the (albeit conflicting) "Floor price" set forth in the Amendment is in fact the price Shropa must accept for his 2022 Vested Shares, whether or not that is currently a "good faith" approximation of the fair market value of those Shares.

25.     Third, Defendant has asserted that Shropa's filing his original petition in Texas state court with certain document attachments, violated some "undefined" confidentiality or nondisclosure obligations to Defendant, and as a result, Defendant now has the right to purchase Shropa's Vested Shares for $0 per share. This, despite the fact that no documents referenced in the pleadings in the State Court Lawsuit were confidential or contain any nondisclosure restrictions, and further, despite the fact that other than filing a motion to seal in Texas State Court (which was never heard), Defendant has taken no other steps to seal the pleadings or otherwise to ameliorate any alleged harm supposedly caused by publicly filing the State Court Lawsuit.

6

26.     Most recently, on January 29, 2026, Defendant, through its counsel, sent a letter to Shropa's Counsel (Exhibit D) purporting to effectuate a purchase of the entirety of Shropa's Vested Shares (having a fair market value, on information and belief, of not less than $5,000,000) for the sum of $0.00 ("The Repurchase Letter").

27.     Defendant claimed the right in the Repurchase Letter to effectuate such purchase without consideration under "Section 3(h)(iii) of the 2022 Stock Award and Amendment".

28.     Despite inquiry by Shropa's counsel regarding the specifics of Defendant's assertion that Shropa violated a nondisclosure agreement with Defendant, Defendant's counsel failed to offer any explanation of the alleged breach prior to sending the Repurchase Letter.

29.     Also on January 29, 2026, without any prior discussion between counsel, Defendant filed a new state court lawsuit in Delaware Chancery Court seeking various Declarations from that court consisting of largely the same declarations being sought by Shropa in connection with this lawsuit.  Such declarations concern the validity and enforceability of the 2022 and 2023 Stock Awards, and the right of the Company to repurchase Shropa's Vested Shares for $0 (the "Delaware Action").  This despite the fact that the very same controversy is already before this Court and the claims asserted in the Delaware Action would be compulsory counterclaims in this case.

30.     To address the factual and legal issues in paragraphs 7-29 above described, Shropa timely files this First Amended Complaint.

31.     All conditions precedent to Shropa's claims for relief have been performed or have occurred.

### IV.    REQUEST FOR DECLARATORY RELIEF

32.     Shropa realleges and incorporates by reference the facts set forth above.

33.     This Claim is brought pursuant to the Uniform Declaratory Judgments Act (TEX. CIV. PRAC. & REM. CODE § 37.01 et seq.) (the "Act").

34.     Defendant is both an interested party pursuant to § 37.004 of the Act and a Mandatory Party pursuant to § 37.006 of the Act.

35.     Pursuant to the Act, the Court may declare rights, status, and legal relations whether or not further relief is or could be claimed, and before or after breach of contract.

36.     Disputes have arisen between Shropa and Defendant regarding their respective rights and obligations regarding the procedure for determining the valuation of Shropa's Vested and unvested Shares, the value of Shropa's Vested and unvested Shares, and the procedures for Defendant's repurchase of Shropa's Vested and unvested Shares both with respect to the 2022 Award and with respect to the 2023 Award.

37.     Shropa seeks a judgment declaring the value of Shropa's Shares or in the alternative the procedure for determining the valuation of Shropa's Shares, together with the timing and method of payment for repurchase of his Shares under the Stock Plan, the 2022 Award, the 2023 Award and the Amendment.

38.     Shropa further seeks a judgment declaring that Defendant only has a right to repurchase shares granted to Shropa in the 2022 Award and not the 2023 Award, and further declaring that the price for repurchase of Vested Shares granted to Shropa in the 2022 Award must be the reasonable value of such Shares as determined in good faith by Defendant, but in no event less than the price set forth in the Amendment.

39.     Shropa further seeks a judgment declaring that Shropa has not breached any confidentiality or nondisclosure obligations to Defendant, or in the alternative declaring that any breach of confidentiality to Defendant was inadvertent and of de minimis impact to Defendant and as such does not diminish Defendant's financial obligations with respect to any repurchase of Shropa's Shares pursuant to the 2022 Award  or the 2023 Award.

40.     Shropa further seeks a judgment declaring that Defendant has materially breached its obligations to Shropa under the Stock Awards and Amendment, so that Shropa's remaining obligations to Defendant that otherwise would have survived the termination of Shropa's employment, including but not limited to Shropa's obligations pursuant to the Proton Fitness LLC Non-competition agreement dated as of January 12, 2022, are themselves terminated.

## BREACH OF CONTRACT

41.     Shropa realleges and incorporates by reference the facts set forth above.

42.     By purporting to exercise a right to repurchase Shropa's Vested Shares for no consideration via the Repurchase letter, despite the provision relied on by Defendant not applying to certain of Shropa's Vested Shares and as to all of Shropa's Vested Shares the applicable facts not supporting reliance on the provision, Defendant has breached its contractual agreements with Shropa and has caused and will cause compensatory, economic damages to Shropa, in an amount to be proven to the trier of fact, but not less than Five Million Dollars ($5,000,000).

## V.     COSTS AND ATTORNEYS' FEES

43.     Shropa realleges and incorporates by reference the facts set forth above.

44.     Shropa is entitled to recover costs and reasonable and necessary attorney fees under Texas Civil Practice and Remedies Code Section 37.009, because this is a suit for declaratory relief. As this is also a suit for breach of contract and Shropa has complied with all conditions precedent, Shropa is also entitled to recover his costs and reasonable attorney's fees under Texas Civil Practice and Remedies Code Section 38.001.

## VI.    JURY DEMAND

45. Shropa requests a jury trial on all questions of fact.

## PRAYER

WHEREFORE, Shropa requests that Defendant be cited to appear and answer herein, and that on final hearing Shropa receives judgment as follows:

(a)    Declaratory judgment construing the rights and remedies of the Parties pursuant to TEX. CIV. PRAC. & REM. CODE § 37.01 *et seq*;

(b)    Costs of court and reasonable attorneys' fees pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 37.009;

(c)    Compensatory, economic damages proximately caused by the breach of contract by Defendant in an amount to be proven to the trier of fact;

(d)    Costs of court and reasonable and necessary attorneys' fees pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 38.001;

(e)    Pre-judgment and post-judgment interest as provided by law; and

(f)    Such other and further relief as the Court may deem appropriate, including but not limited to such other declarations as are just and appropriate to protect and enforce Shropa's rights.

Dated this 12th day of February 2026.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Keith A. Clouse*
**Keith A. Clouse**
State Bar No. 04410300
keith@clousebrown.com
**John S. Morgan**
State Bar No. 14447475
jmorgan@clousebrown.com
**Bruce E. Rothstein**
State Bar No. 17319275
brothstein@clousebrown.com
**CLOUSE BROWN PLLC**
4245 North Central Expressway, St. 350
Dallas, Texas 75205
Telephone: (214) 698-5100
Facsimile: (214) 481-8881
***ATTORNEYS FOR PLAINTIFF***
***JOSHUA SHROPA***

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system on February 12, 2026.

<div style="margin-left:40%">

*/s/ Keith A. Clouse*
**Keith A. Clouse**

</div>